UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
NAQUONE TAYLOR,                                             :
                                    Plaintiff,              :  **MEMORANDUM**
                                                            :  **DECISION AND ORDER**
            - against -                                     :
                                                            :  15 Civ. 5410 (BMC)
312 GRAND STREET LLC and HAPPY                              :
M.E.W.S. INC., d/b/a Mulholland's,                          :
                                                            :
                                    Defendants.             :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks a default judgment under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), consisting of injunctive relief and attorneys' fees. The motion is granted to the extent set forth below. Although I find that the injunction should issue, plaintiff's attorney has made a number of miscues that have made unnecessary work both for her and the Court, and which, together with the plethora of actions brought by this plaintiff and another multiple-case plaintiff represented by this attorney, raise a concern that the motivation behind the case is too much about attorneys' fees and too little about achieving a meaningful benefit for her client. For the time being, I conclude that the best way to address this concern is to defer the recovery of attorneys' fees pending a showing by plaintiff's counsel that she has made reasonable efforts to achieve compliance with the injunction.

## BACKGROUND

Plaintiff is confined to a wheelchair as a result of Amyotrophic Lateral Sclerosis. He commenced this action on September 20, 2015, against the owner/landlord as well as the tenant which operated a bar or restaurant in a building, alleging, in general, that the premises did not

provide the level of access for the disabled that is required under the ADA and its regulatory framework. Plaintiff amended the complaint several weeks later. He avers that he has tried to enter the premises without success because there was no way to get his wheelchair over the steps. The single-count amended complaint includes, by way of example only, 23 different ADA violations in the bar, ranging from inaccessible entry to tables that are too high to restroom access and use deficiencies plus a multitude of other ADA regulatory violations.

In the instant motion, the claimed violations are made more specific by an affidavit and report from a "commercial site inspector" named Jay Egilmez, who asserts that he has been performing physical site inspections for commercial properties for nearly ten years to determine ADA compliance, and that he has "intimate working knowledge" of 36 C.F.R. Part 1191, Appendices B and C, and 28 C.F.R. Part 36, which, he says, constitute the applicable regulations for disability access to buildings. He performed a site inspection on the subject property at 312 Grand Street, Brooklyn, New York, days before the commencement of this action. He found a total of 37 violations.

However, of those, he has identified eight requiring modifications that "are readily achievable and necessary to ensure plaintiff has reasonable access to the goods and services offered by Mulholland's" and which "may be implemented at a reasonable construction cost considering the property value as compared to the cost of said remediation efforts." These consist of leveling the landing at a chosen accessible entrance; changing the slope of the entrance ramp; providing at least 5% of accessible seating; allowing table ordering for the disabled since their wheelchairs cannot reach the bar; lowering the restroom fixtures, i.e., the door lock, mirror, and paper towel dispensers; changing the entry and locking hardware on the restroom door;

putting in "grab bars" in the restroom; and moving the toilet paper dispenser. These items are described in much greater detail in his report, and each is tied to specific ADA regulations.

Although not a *pro se* case, the procedural history of this case, even though defendants never appeared, is full of the kind of bloopers one often sees in *pro se* litigation. Both the original complaint and the amended complaint recite in the caption that they are filed in the "Southern District of New York," which they are not, and both allege that the building in question "is located at 203 Allen Street, New York, NY 10002, in New York County, New York," which is within the Southern District of New York, and which would make venue improper in this district. However, in the immediately preceding paragraph, plaintiff alleges that the landlord is the "owner of the premises located at 312 Grand Street, Brooklyn, New York," which appears to be the correct address and suffices for venue. The originally-stated legal name of the tenant (Fultongrand Bar, Inc.) was entirely different than its actual name (Happy M.E.W.S. Inc.), which necessitated the amended complaint. It took over six weeks to effect service that could have been done the first day (if the proper name of the tenant had been used).

The Initial Status Conference was adjourned four times on plaintiff's motions. Two of them were designated as "emergency" motions, although without reason; they were apparently emergencies because plaintiff waited until a few hours before the conference, rather than the 48 hours required under this Court's individual practice rules, to make them. None of the four motions complied with that practice rule, although one of them got reasonably close, but that one had the caption from another case on it, the wrong judge in the caption, and requested an adjournment for yet a third plaintiff (that is, neither the one in this case nor in that wrong caption) and named defendants in the wrongly captioned case in seeking an adjournment.

When plaintiff filed his request for entry of default with the Clerk, the caption was right, but the plaintiff identified in the body of the request was from some other case. The title of the document sought entry of default against both defendants, naming them each, but the body of the request noted service only on the landlord/owner, although it referred to "defendants" in the plural several times. In fact, at the time that plaintiff filed the request for entry of default, he had only filed proof of service on the landlord and had not filed proof of service on the tenant.

When plaintiff finally filed proof of service on the tenant and it defaulted, plaintiff requested entry of default against both defendants, and the Clerk entered it. The Court directed plaintiff to move for default judgment within fourteen days. The time passed with no filing. The Court ordered plaintiff to show cause why sanctions should not be imposed or the case dismissed for failing to comply with its Order. The time passed for responding to the Order to Show Cause with no filing. Some time later, plaintiff moved for an extension of time to respond to the Order to Show Cause. The Court denied that request, imposed a $350 sanction against plaintiff's attorney, and again directed the filing of a motion for default judgment.

Plaintiff moved for reconsideration as to the sanction, and explained that plaintiff had been delayed in obtaining the necessary expert report to move for a default judgment, but offered no excuse for having failed to ask for more time or failing to timely respond to the Order to Show Cause. At the same time, plaintiff finally filed his motion for a default judgment and attorneys' fees. Plaintiff also inexplicably filed his motion under seal – but provided absolutely no basis for why the motion should be sealed. The Court denied the motion for reconsideration of the sanction and ordered the motion unsealed. Plaintiff then moved for reconsideration of the purported denial of the motion for default judgment and attorneys' fees, but the Court pointed

out that this motion was unnecessary because the Court had not yet ruled on the motion for a default judgment; it was, and is, still pending.

That motion is now before me.

## DISCUSSION

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc., No. 08 Civ. 3168, 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing Erwin DeMartino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). "Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure*, Civil 3d, § 2688, at 63 (Westlaw database updated 2015) (footnote omitted).

I hold that plaintiff has stated a claim for liability. Plaintiff's affidavit is sufficient to prove that he is disabled and unable to access the premises because of his disability. He thus has standing to bring this action. See generally Shariff v. Beach 90th St. Realty Corp., No. 11 Civ. 2551, 2013 WL 6835157 (E.D.N.Y. Dec. 20, 2013).

The proof is also sufficient, albeit barely, to demonstrate that the premises are not in compliance with the ADA. Title III of the ADA requires that disabled citizens have "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). See 28 C.F.R. § 36.201. The statute applies to any defendant who "owns, leases or operates a place of public accommodation . . . ." See, e.g., Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2d Cir. 2008); Camarillo v.

5

Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008). Generally speaking, structures that predate the enactment of the statute in 1993 have an easier time complying with it; they are subject to making the least demanding adaptations to accommodate the disabled. If the premises are "altered" after the statute's effective date, however, they have to make more accommodations, see 42 U.S.C. § 12183(a)(2); and if they are built post-1993, then that requires the highest level of accommodations. See de la Rosa v. 597 Broadway Corp., 13 Civ. 1799, 2015 WL 7351540, at *6-7 (S.D.N.Y. Aug. 4, 2015). There is no damage remedy under the ADA; the sole remedy is injunctive relief to compel architectural compliance and discretionary attorneys' fees. See 42 U.S.C. §§ 12188(a); 12182(b)(A)(iv).

The complaint and motion here give no indication of when the structure was built or if it was altered, and I will therefore assume that it is a pre-1993 structure with no alterations. Even under that more lenient standard, the declaration of plaintiff's expert is only narrowly sufficient to establish the eight violations of the ADA that are described as being subject to remediation at reasonable cost. I would have preferred more detail in the declaration of plaintiff's expert. I do not know if he is an engineer or a maintenance worker. And although he concludes that the eight violations can be remedied at reasonable cost in relation to the value of the premises, I do not know any of the reasoning that he used in reaching that conclusion as there is no underlying data in his report or declaration, whether as to value, cost of remediation, or anything else.

Notwithstanding the skinniness of the proof of violations, I am accepting it for two reasons. First, defendants have chosen to default, both as to the complaint, and in opposition to the motion for a default judgment, where they could have been heard at least as to the remedy, and I am not going to make arguments for them about the adequacy of the proof that they have foregone themselves. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 120 (2d Cir. 2015)

6

(Korman, D.J., concurring in part and dissenting in part) (observing that a court should not act as a defaulting party's lawyer and that "[t]he magistrate in the case essentially took it upon himself to act as counsel for parties who had not bothered themselves to appear in court."). Here, plaintiff's expert has listed specific violations based on a personal inspection; he has tied the violations to specific, applicable portions of the regulations; and, whatever his formal training, if any, he has ten years of experience in doing these kind of reports. These facts alone might not pass muster in a contested matter, but they are sufficient in the absence of any objection.

Second, given the history of this case described above, I am concerned that requesting additional proof from plaintiff would not assist me further in understanding the claim and might even lead to more miscues, and the alternative, denying the motion for insufficient proof and dismissing the case, would again have me acting as defendants' lawyer when they have chosen not to have one. Having reviewed the regulations cited by plaintiff's expert, I can find that there is sufficient proof of violations to warrant the limited injunctive relief that plaintiff has requested.

Plaintiff has not proposed an effective form that such injunctive relief should take. He asserts that defendants should be required to make the modifications "before the Property may be reopened for commercial use." This appears to suggest that the Marshal should close down the bar until the work is done. But plaintiff has given me no way of knowing from an architectural perspective whether the injunction that I issue should require the necessary alterations in a week, which may be infeasible, or a year, which might be far too long, and shutting down what appears to be a marginal business is not going to get plaintiff or other disabled persons access. No matter; the often-used method in this district for awarding injunctive relief in ADA cases is to require defendants to submit a compliance plan within a prescribed period of time. See Shariff v.

7

Radamar Meat Corp., No. 11 Civ. 6369, 2014 WL 1311565, at *2 (E.D.N.Y. Mar. 31, 2014); Shariff v. Beach Realty, 2013 WL 6835157, at *5. I will do so in the final judgment of injunction that I issue pursuant to this decision.

But the lack of attention to the form that the injunctive relief should take spills over into my consideration of plaintiff's request for attorney's fees and costs. It raises the question of whether the injunctive relief really matters to this plaintiff at all, or whether the *raison d'etre* for this action is the recovery of attorneys' fees. The case exists against an unusual background that tends to support the latter conclusion: plaintiff has brought fifteen ADA cases in this district in the last two years. He has brought another six in the Southern District of New York during the same period. Another disabled plaintiff, Jerry Cankat, who has been wrongly designated as the plaintiff in this case from time to time, as part of the series of blunders described above, has brought another 38 cases in this district during the same period, and two in the Southern District of New York (one of which was commenced before me, but I transferred it there for improper venue). Both of these plaintiffs are represented by the same attorney. All of the cases are brought against small bars and grills, restaurants, or bodegas or occasionally corner grocery stores (and sometimes their landlords), which are likely ill-equipped financially to vigorously defend the claims and perhaps even to pay the cost of compliance with the technical ADA regulations that apply to them.

I accept the sworn statement of the plaintiff in the instant case that he attempted to access the premises that are the subject matter of this action and was unable to because of architectural barriers, as I have not heard him testify and no one has appeared to cross-examine him. But I don't think it's an undue degree of cynicism to picture plaintiff driving around or being driven

8

around in a defined circumference looking for "mom and pop" businesses that seem to have a step-up to get in or a ramp that looks like it's at too steep an incline.

To not take this view would mean that between the two plaintiffs identified above, they are genuinely seeking to use the services of 61 bars and grills in New York City, an extraordinary number that I don't use in ten years let alone one year, and I don't know any two people who do except perhaps restaurant reviewers. Even viewing this solely from the perspective of plaintiff in this action, he would have me believe that he wants to patronize 21 bars and grills in an 18 month period spread throughout Brooklyn and Queens and, if one considers the Southern District of New York cases, up through the Bronx.

I simply have a hard time accepting factually that he really wants to do that. It seems clear, instead, that there is something else afoot here, and that foot is so big that it also seems a fair conclusion that this case has little or nothing to do with Congress's purpose in enacting the ADA. It is, rather, an exercise in shooting ducks in a barrel – marginal businesses that barely have enough funds to defend themselves – in order to generate a small amount of attorneys' fees.

One of my colleagues, in writing about yet another serial plaintiff (although not represented by the attorney in this case) has noted the disturbing image conjured up by these attorney-generated lawsuits and has found that the award of attorneys' fees should reflect that:

> Plaintiff and his counsel have commenced seventeen ADA actions in this district alone. Courts throughout the country have raised concerns about this type of serial ADA litigation to take advantage of the statute's attorney's fees provision. Where "cases involve identical legal issues and similar factual issues [, t]he duplicitous nature of the litigation warrants a reduction in the law firm's fee award." Plaintiff's seventeen cases in this district raise substantially similar claims and the complaints share the same boilerplate language. In such situations, courts may "(i) cut the number of hours billed, (ii) reduce the amount of the fee, or (iii) disallow the entire amount." A fifteen percent across-the-board reduction in the number of hours billed is appropriate in this action.

Shariff v. Beach Realty, 2013 WL 6835157, at *7 (citations and quotations omitted). The other client of plaintiff's attorney here, Jerry Cankat, has himself been the subject of local news coverage raising questions about his use of the ADA, see Caitlin Nolan and John Marzulli, *Disabled Queens man sues at least 20 mom-and-pop businesses over 'architectural barriers' preventing wheelchair access*, New York Daily News (Apr. 28, 2015), http://www.nydailynews.com/new-york/queens/disabled-queens-man-sues-20-businesses-barriers-article-1.2201545, and the abuse of the ADA as a means of obtaining awards of attorney's fees has long been the subject of national coverage. See e.g., Alison Stateman, *Lawsuits by the Disabled: Abuse of the System?*, Time Magazine (Dec. 29, 2008), http://content.time.com/time/nation/article/0,8599,1866666,00.html.

This is a general concern that filters into the issue of determining appropriate attorneys' fees when an individual plaintiff files ADA cases *en masse*. In the instant case, we have the additional layer of concern that the legal work done here is not, to understate it, of the highest quality. The description of the procedural history of this case shows that plaintiff's counsel has not only failed to comply with the Court's orders – in several instances, she appears to have not read them, read them superficially, or read them at the last minute – but she is not even reading with any care the documents that she herself has drafted and filed. This is a federal court; I do not think it is too much to ask attorneys to be just a bit careful with what they are doing when they choose to appear here.

The indifferent practice continues in the present motion. Putting aside the plethora of typographical errors that it contains, plaintiff's attorney misstates the standard for determining a reasonable hourly rate. Although she correctly cites the Second Circuit's decision in Simmons v. New York City Transit Authority, 575 F. 3d 170, 172 (2d Cir. 2009), as requiring ascertainment

of a reasonable hourly rate based on practice within the district, she then cites Luca v. County of Nassau, 698 F. Supp. 2d 296 (E.D.N.Y. 2010), for the proposition that Simmons may be effectively disregarded, and her reasonable rate may be ascertained with reference to rates in the Southern District of New York. Luca does not say that. It politely disagrees with the Circuit's rationale in Simmons, as have many cases in this district, but it follows Simmons as the binding authority that it is. It fixed a reasonable attorneys' fee solely with reference to Eastern District rates. Thus, Luca contradicts plaintiff's attempt to justify a Southern District rate.

Plaintiff's counsel asserts that her reasonable hourly rate is $400 per hour. There is no help in determining whether she is entitled to that in the motion. Despite referring to a "multitude of ADA cases" in which she has been involved "both within and without the state of New York," she does not cite a single case in which she has been awarded a fee at a court-approved rate. Nor does she cite any cases that have allowed a $400 per hour rate in an ADA case in this (or any) district. Instead, she relies on Luca, a Title VII case which allowed a $400 per hour rate for a gentleman who is probably the most high profile civil rights lawyer with offices in this district, and a Southern District case, Harty v. Par Builders, Inc., No. 12 Civ. 2246, 2016 WL616397 (S.D.N.Y. Feb. 16, 2016) – although she gave me only the name; the citation of the case was entirely omitted – which rejected a requested $425 hourly rate in the Southern District in an ADA case, reducing it to $375. Even that case was in the context of approving a settlement agreement, which, as I have noted previously, and which Luca itself notes, are not the most reliable indicators of a reasonable hourly rate. See Encalada v. Baybridge Enterprises Ltd., No. 14 Civ. 3113, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014) ("When the plaintiff, his lawyer, and the defendant are all happy with a settlement that includes attorneys' fees, the degree of judicial scrutiny naturally declines"), aff'd, 612 F. App'x 54 (2d Cir. 2015); Luca, 698 F.

Supp. 2d at 304 (noting that stipulated rates "are of lesser weight than those in which a district court selects an appropriate rate"). As Encalada also notes, rates are not always transferable between different types of litigation, because the market for lawyers can vary widely depending upon the kind of case. 2014 WL 4374495, at *1 ("My experience is that the bar for different types of cases is almost entirely distinct, and while there is some overlap between the skillsets required under various fee-shifting statutes, the market conditions – the number of lawyers willing and able to undertake specific kinds of cases – between statutes can be very different").

Since plaintiff's counsel has provided insufficient evidence to justify a reasonable hourly rate of $400, or indeed any rate, I need not consider whether the amount of time that she spent on this case is reasonable. I will note that at least some of that time is attributable to creating or remediating the mistakes that she has made in the case, and while an attorney cannot be expected to perform mistake-free, the quantity and quality of mistakes described in this decision may require an adjustment of the time allowed or the reasonable hourly rate when the time comes to determine a fee award.

However, my conclusion is that the time to decide on an award is not now. Given both the systemic doubts about the cases brought by this plaintiff and this plaintiff's attorney, and the particular problems that have occurred in the instant case, I find that it is incumbent upon counsel to actually make some effort to achieve something in this case besides obtaining a piece of paper (the judgment) that may amount to nothing more than a justification for an award of attorneys' fees. I emphasize that I am not subjecting plaintiff's request for fees to a "recovery" contingency, that is, he does not have to demonstrate a particular level of compliance with the injunction before an attorneys' fee will be allowed – although it may not be too much to ask an ADA plaintiff's attorney to have some pre-litigation indication that a defendant has the financial

wherewithal to make the changes to the premises that she alleges that the ADA requires before she sues a defendant. Rather, I am merely deferring the issue of fees until such time as plaintiff can demonstrate that he has made a reasonable effort to obtain compliance with the injunction. At that time, plaintiff's attorney can seek to cure the deficiencies in her present request for attorneys' fees by demonstrating a reasonable hourly rate.

Of course, because plaintiff's attorney will presumably expend effort to effect compliance with the injunction (although she and her client may determine that it is just not worth it and forget about this case), those efforts, to the extent reasonable, will also support an award of attorneys' fees at a reasonable hourly rate. Any such renewed application for attorneys' fees and costs will have to be made within a reasonable time of entry of the injunction, although, considering the potential difficulties in enforcing an injunction against defaulting defendants, the 14 day time period in Federal Rule of Civil Procedure 54(d) is waived.

## CONCLUSION

Plaintiff's motion for a default judgment is granted to the extent set forth above. A Final Judgment with Mandatory Injunction shall issue.

**SO ORDERED.**

                                                            U.S.D.J.

Dated: Brooklyn, New York
       March 22, 2016